**SKOKOMISH INDIAN TRIBE,**
Appellant,

v.

**E. L. FRANCE, Trustee, et al., Appellees.**

No. 16008.

United States Court of Appeals
Ninth Circuit.

June 26, 1959.

Keith, Winston & Repsold, Spokane, Wash., Little, Le Sourd, Palmer, Scott & Slemmons, Kenneth A. Cox, Keith M. Callow, Frederick Paul, Malcolm S. McLeod, Seattle, Wash., for appellant.

Skeel, McKelvy, Henke, Evenson & Uhlmann, William E. Evenson, Jr., Seattle, Wash., Carnahan, Gordon & Goodwin, Harry Sager, Tacoma, Wash., Glenn E. Correa, Shelton, Wash., Ryan, Askren, Mathewson, Carlson & Bush, Raymond C. Swanson, Seattle, Wash., Marshall McCormick, City Attorney, Robert R. Hamilton, Allan R. Billett, Asst. City Attys., Tacoma, Wash., B. Franklin Heuston, J. W. Graham, Shelton, Wash., for appellees.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Seattle, Wash., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellee, U. S. A.

John J. O'Connell, Atty. Gen., H. T. Hartinger, E. P. Donnelly, Asst. Attys. Gen., State of Washington, for appellee, State of Washington.

Before POPE, CHAMBERS, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This is a trespass and quiet-title action involving certain tidelands located at the head of Hood Canal in the State of Washington. The action was commenced by

the Skokomish Indian Tribe which claims the tidelands by virtue of a certain treaty and an executive order. Named as defendants are the State of Washington and several corporations and individuals who are alleged to claim some interest in these tidelands.

After proceedings extending over several years an order was entered (1) denying plaintiff's motion to order the joining of the United States of America as an additional party plaintiff, (2) dismissing the action as to the State of Washington for want of consent to be sued in a federal court, and (3) dismissing the action as to all defendants for want of jurisdiction of the subject matter. Plaintiff appeals, contesting each of these rulings.[1]

The last of these rulings will be considered first. Appellant predicates jurisdiction on 28 U.S.C.A. §§ 1331 and 1345. The effect of the order under review is to deny the applicability of either of these jurisdictional statutes.

Under § 1331 district courts have original jurisdiction of civil actions wherein the matter in controversy exceeds the sum or value of three thousand dollars, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. Appellant argues that the allegations of the complaint establish the jurisdictional prerequisites specified in § 1331.[2]

The allegations relied upon are summarized in this and the following three paragraphs. The Skokomish Indian Tribe and certain other tribes entered into a treaty with the United States on January 26, 1855.[3] Article II of this treaty reserved to the tribes an aggregate of six sections of land at the head of Hood Canal. The sections referred to in this treaty were not specifically de-

scribed, it being provided that they would be thereafter set apart. Article IV of this treaty reserved to the Indian tribes certain fishing rights "at usual and accustomed grounds and stations."

On February 25, 1874, an executive order was issued by President Grant setting aside the present Skokomish Indian Reservation. This order employs a metes and bounds description which is stated to be "inclusive of the six sections situated at the head of Hood's [sic] Canal, reserved by treaty with said Indians January 26, 1855. * * *" The metes and bounds description closes with these words: " * * * thence southerly and easterly along said Hood's [sic] Canal to the place of beginning."

Continuing with the summary of the complaint: It was the intent and purpose of the United States and of the Indian tribes which executed this treaty to encourage the tribes to reside at one place on a reservation which would be sufficient for their wants. The effect of the executive order was to reserve for the exclusive use, benefit, and occupancy of the Skokomish Indian Tribe the described uplands and adjacent shorelands on Hood Canal. Included in such reservation was the exclusive right to use the bed of Hood Canal and all tidelands touching and bordering the reservation, also including the exclusive fishing rights mentioned in article IV of the treaty.

It is finally alleged that notwithstanding the setting aside of rights in these tidelands to the Skokomish Indian Tribe the State of Washington has leased and conveyed portions thereof to certain of the defendants, and claims ownership of the remaining portions. The portions so conveyed or claimed are described with particularity and the persons claiming an interest in each such portion are named.

1. The motion of appellees other than the State of Washington and the United States to dismiss the appeal as not timely is denied.

2. While the complaint has been supplanted by a pretrial order, the determination as to whether a federal question is presented depends on the allegations of the com-

plaint. Gully v. First National Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; Joy v. City of St. Louis, 201 U.S. 332, 340, 26 S.Ct. 478, 50 L.Ed. 776.

3. Treaty of January 26, 1855, proclaimed April 29, 1859, 12 Stat. 933.

Appellees other than the State of Washington and the United States argue that under these allegations only the meaning of descriptive words in an executive order is involved. Since, in their view, no provision of the Constitution, laws, or treaties of the United States is at issue, they contend that the action does not give rise to a federal question within the meaning of § 1331. Appellant, on the other hand, urges in effect that the meaning of the executive order is dependent upon the construction to be placed upon the treaty of 1855 concerning which the parties are in disagreement.

The executive order makes reference to the treaty. It was apparently designed to describe the land actually reserved by the treaty. The treaty mentions certain fishing rights. The executive order specifies boundary lines bordering on waters where fishing may be an important activity. There is accordingly a relationship between the treaty and the order which may or may not have significance. The parties are in disagreement as to the meaning of the executive order. Under these circumstances it is our view that ascertainment of the meaning of the order draws into question the construction of the treaty.

It is therefore our conclusion that under the allegations of the complaint a claimed right created by treaty is an essential element of appellant's cause of action. It is a right which will be supported if the treaty is given the construction for which appellant contends, and defeated if given the construction advocated by appellees. The controversy as to the meaning of the treaty is a genuine and present controversy. It is not specifically alleged in the complaint that appellees contest appellant's interpretation of the treaty. But this is necessarily to be inferred from the allegations concerning the nature of the claims which appellees assert.

It follows that the complaint meets the essential tests requisite to the existence of federal-question jurisdiction under 28 U.S.C.A. § 1331.[4]

It is true, as appellee State of Washington contends, that jurisdiction under § 1331 does not obtain if prior decisions have so defined the claimed federal rights that they are removed from controversy.[5] The arguments made and authorities cited on this appeal have not convinced us that the controversy concerning the meaning of this treaty has been set at rest by prior decisions.[6]

Appellees other than the State of Washington and the United States further argue, however, that even if a federal question is presented jurisdiction under § 1331 may not be invoked because the complaint fails to show that the matter in controversy exceeds the sum of three thousand dollars. As before noted, such a showing must be made if § 1331 is to apply.

It is alleged in the complaint that the matter in controversy exceeds the sum of three thousand dollars. It is not alleged, however, that the matter in controversy exceeds this sum as to each defendant.

The land involved in this quiet-title action is divided into separate parcels, each described with particularity in the complaint, separate appellees being named as to each such parcel.[7] All of

---

4. See Gully v. First National Bank, supra, 299 U.S. at pages 112–113, 57 S.Ct. at pages 97–98; Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205; Devine v. City of Los Angeles, 202 U.S. 313, 333, 26 S.Ct. 652, 50 L.Ed. 1046.

5. See Levering & Garrigues Co. v. Morrin, supra, 289 U.S. at page 105, 53 S.Ct. at page 550; Hannis Distilling Co. v. City of Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482; McGilvra v.

Ross, 215 U.S. 70, 30 S.Ct. 27, 54 L.Ed. 95.

6. We express this opinion for the purpose of passing on the jurisdictional question and without intending to indicate a view as to the merits of the controversy.

7. Two or more defendants are named with regard to most parcels, and some defendants are named as claiming an interest in two or more parcels.

the appellees, however, claim to derive their title from a common source.[8] Moreover, while the land in question is divided into parcels, it comprises essentially a single tract of land consisting of the tidelands adjoining the Skokomish Indian Reservation.

Under these circumstances the value of the entire tract is to be considered in determining whether the jurisdictional amount has been pleaded, notwithstanding the fact that the claims of individual appellees relate to particular parcels contained in such tract.[9] The allegations of the complaint with regard to the jurisdictional amount are therefore adequate.

We accordingly hold that the district court had federal-question jurisdiction under § 1331. It was therefore error to dismiss the action as to all defendants for want of jurisdiction of the subject matter.

It is contended by appellees that a prior quiet-title action instituted in the Superior Court of the State of Washington for Mason County, involving some of the same lands and appellees, makes it necessary to dismiss this action. The state action was instituted by one of the appellees. According to the contentions of appellees, as set out in the pretrial order, it involves title to "part" of the lands involved in the instant suit. Appellant and six other appellees are named defendants in the state action.

The parties differ widely in their opinion as to the similarity of issues in the two suits. The briefs and record do not provide enough information to enable us to resolve the conflict. Appellees contend, however, that appellant failed to appear in that action and that an order of default was entered against it. Under the circumstances we need not pass upon this contention at the present time. If in the further proceedings before the district court it is determined that as to some parcels or some appellees a prior state action involving substantially the same issues is pending, an appropriate order dismissing the action as to such parcels or appellees, or holding the action in abeyance as to them, may be entered.

Appellant contends that the court also erred in denying its motion to add the United States as a party plaintiff.

Appellant is aggrieved by this ruling because unless the United States becomes a party to the action it will not be bound by any judgment entered therein. Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456. Moreover, if appellees are correct in asserting that the United States is an indispensable party, refusal to join the United States as a party will necessarily bring the lawsuit to an end.

No suit may be brought against the United States, as sovereign, without its consent.[10] Appellant contends, however, that the United States

---

8. Appellee State of Washington claims to have acquired title to certain of the tidelands from the United States by virtue of the Enabling Act, the admission of the state into the Union, and certain provisions of the state constitution, it being contended that such lands had been held by the United States in trust for the state to be formed. Some of the other appellees claim that title to some of these tidelands passed to them by conveyance from the State of Washington. Other appellees claim to have acquired title to certain tidelands in connection with the acquisition of reservation uplands which had been allotted, patented, and sold to or condemned by them or their predecessors. The title claimed by all appellees is accordingly derived from the United States by virtue of dealings directly or indirectly connected with the setting aside of the Skokomish Indian Reservation. A number of the appellees also claim by virtue of such additional circumstances as condemnation and the running of the statute of limitations.

9. See Cornell v. Mabe, 5 Cir., 206 F.2d 514, 516; Peterson v. Sucro, 4 Cir., 93 F.2d 878, 882, 114 A.L.R. 890.

10. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Shaw, 309 U.S. 495, 500, 60 S.Ct. 659, 84 L.Ed. 888.

has impliedly consented to be sued in a case such as this. It is argued that such an implication is to be drawn from the treaty of January 26, 1855, referred to above, read in the light of the government's historical relationship to the Indian tribes. In this connection a paternalistic relationship between the government and the Indian tribes is asserted and the status of the two is likened to that of guardian and ward.

The Federal-Indian relationship has many times been said to resemble that of guardian and ward.[11] However, in the absence of some specific language to that effect in the treaty, the legal obligations of a true guardianship do not prevail.[12] We are therefore of the view that the consent of the United States to be sued in a case of this kind cannot be predicated on the guardian and ward concept. Nor do we find anything in the 1855 treaty which warrants an implication that the United States has consented to be sued. The opinion just expressed finds support in Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, 458, where a similar conclusion was reached on closely parallel facts.

For the reasons indicated, we hold that the trial court did not err in denying the motion of appellant that the United States be required to join as a party plaintiff.[13]

Having reached this conclusion, it is necessary for us to decide whether the United States is an indispensable party.

■■ As stated in Silver King Coalition Mines Co. of Nevada v. Silver King Consolidated Mining Co., 8 Cir., 204 F. 166, 169:

"An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience." [14]

For the reasons stated in Choctaw and Chickasaw Nations v. Seitz, supra, 193 F.2d at pages 458–460, where the same question was presented, we are of the opinion that the United States is not an indispensable party to this litigation.

There remains to be considered the question of whether the district court erred in dismissing the action as to the State of Washington for want of consent to be sued.

■ Under the Eleventh Amendment a state may not be sued in the federal courts without its consent.[15] This much appellant concedes. It contends, however, that the State of Washington has waived its immunity to suit in this federal action. That a state may waive such immunity is beyond question. State of Missouri v. Fiske, 290 U.S. 18, 24, 54 S. Ct. 18, 78 L.Ed. 145. Two reasons are

---

11. See, for example, United States v. Hellard, 322 U.S. 363, 367, 64 S.Ct. 985, 88 L.Ed. 1326; Morrison v. Work, 266 U.S. 481, 485, 45 S.Ct. 149, 69 L.Ed. 394; Nadeau v. Union Pacific Railroad Company, 253 U.S. 442, 445–446, 40 S. Ct. 570, 64 L.Ed. 1002; State v. Edwards, 188 Wash. 467, 62 P.2d 1094.

12. Sioux Tribe of Indians v. United States, Ct.Cl., 146 F.Supp. 229, 237–238; Department of Interior, Federal Indian Law (1958), 557.

13. The disposition thus made of this specification of error makes it unnecessary for us to determine (1) whether under the Federal Rules of Civil Procedure, 28 U.S.C.A. (see Rule 14) a person can be required to join as a party plaintiff,

and (2) whether the United States can ever be ordered to join as a party plaintiff, inasmuch as Congress has given the Attorney General broad authority to determine when and where suits may be instituted in the name of the United States. See United States v. State of California, 332 U.S. 19, 26–29, 67 S.Ct. 1658, 91 L.Ed. 1889; Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676, 681–682.

14. See, also, Peterson v. Sucro, 4 Cir., 93 F.2d 878, 881.

15. Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Ford Motor Company v. Department of Treasury of State of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389.

given in support of the assertion that immunity has here been waived. The first of these is that such waiver was manifested by the manner of the state's appearance and handling of this lawsuit.

■ Article II, section 26, of the Washington State Constitution provides that the legislature shall direct by law in what manner and in what courts suits may be brought against the state. Pursuant to the authority thus granted, the legislature enacted RCW 4.92.010. It is therein provided in part that quiet-title actions in which the State of Washington is a necessary or proper party defendant "may be commenced and prosecuted to judgment against the state in the superior court of the county in which such real property is situated. * * *"

If we regard this statute as one expressing the state's consent to be sued, it will be observed that consent is given only with respect to suits in state courts. Appellant argues in effect, however, that since the statute recites that the state "may" be sued in the superior court, suits against the state in federal court are also permissible.

The absence of an express statutory prohibition of suits against the state in federal court is beside the point. An express or implied consent to be sued in federal court, or waiver of immunity from suit in such court, must be found.

In our opinion, it is not found in a statutory provision waiving state immunity to suit in a state court.

■ RCW 79.08.020, a provision of the chapter dealing with public lands of the state, authorizes the state attorney general on his own initiative to defend an action to which the state is or may be a party in any court of the United States.[16] Appellant argues that this statute is a legislative expression of the state's consent to be sued in federal court where the state attorney general determines to appear on behalf of the state. Our attention is called to the fact that the state attorney general filed a general appearance in this action. Emphasis is also placed upon the asserted fact that in this case the state is involved in its proprietary rather than its governmental capacity.[17]

The only relief asked by the state in this case was and is that the action be dismissed as to it, on the ground that the state had not consented to be sued. It was appropriate to request this relief after making a general appearance, since special appearances are no longer recognized in the federal practice.[18] In our view, the general appearance did not and could not constitute a waiver of immunity unless a state statute expressly or impliedly gives it that effect.[19] We do not

16. RCW 79.08.020: "It shall be the duty of the attorney general, to institute, or defend, any action or proceeding to which the state, or the commissioner, or the board, is or may be a party, or in which the interests of the state are involved, in any court of this state, or any other state, or of the United States, or in any department of the United States, or before any board or tribunal, when requested so to do by the commissioner, or the board, or upon his own initiative.

"The commissioner is authorized to represent the state in any such action or proceeding relating to any public lands of the state, except capitol building lands." [Now RCW 79.01.736]

17. Appellant also contends that RCW 79.08.020 has in effect "absolutely commanded" the attorney general to defend such actions. It will be observed, how-

ever, that the mandatory duty of the state attorney general to appear and defend applies only when he is "requested so to do by the commissioner, or the board. * * *" There is no indication in this record that such a request was made. Absent such request, the statute makes it the duty of the state attorney general to appear only when he chooses to in the exercise of "his own initiative."

18. See Rule 12(b), 28 U.S.C.A.; Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 139 F.2d 871, 874.

19. See Ford Motor Co. v. Dept. of Treasury of Indiana, supra, 323 U.S. at page 468, 65 S.Ct. at page 352; Deseret Water, Oil & Irrigation Co. v. People of State of California, 9 Cir., 202 F. 498, 500; Title Guaranty & Surety Co. of Scranton, Pa. v. Guernsey, D.C.Wash.,

read RCW 79.08.020 as doing so. No other statute claimed to have that effect has been called to our attention.

This brings us to the second reason advanced by appellant in support of the contention that the State of Washington has consented to be sued in this action. This reason is based upon the impact which appellant attributes to article IV of the treaty of 1855, section 4 of the Enabling Act, 25 Stat. 676, and article XXVI, section 2 of the Washington State Constitution.

In article IV of the treaty of 1855, it is provided that the right of taking fish at all usual and accustomed grounds and stations "is further secured to said Indians, in common with all citizens of the United States. * * * "

In section 4, subd. 2 of the Enabling Act the people of the proposed states of North Dakota, South Dakota, Montana, and Washington agreed to disclaim forever all right and title to the unappropriated public lands lying within the boundaries of the proposed states, "and to all lands lying within said limits owned or held by any Indian or Indian tribes. * * * " The people further agreed that "until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States. * * * "

In article XXVI, section 2, of the Washington State Constitution, the state entered into a compact with the federal government by adopting, verbatim, the above-quoted provision of the Enabling Act.

██ Treaty provisions of the kind referred to above are supreme over the constitution and laws of a state, as the Washington Supreme Court has itself held. State v. Satiacum, 50 Wash.2d 513, 314 P.2d 400. The indicated provisions of the Enabling Act and state constitution also evidence commitments binding upon the state with respect to lands owned or held by Indians or Indian tribes. These sources of law may prove significant in any adjudication of the title to the tidelands in question.

██ In our view, however, they do not tend to indicate that the State of Washington has expressly or by implication consented to be sued in federal court on such an issue. The treaty makes no reference to court proceedings of any kind. The quoted provision of the Enabling Act, repeated in article XXVI, section 2, of the state constitution, likewise deals only with substantive rights. The state contracted to recognize certain Indian rights, but it did not thereby agree to stand trial in federal court with regard to those rights.

The state concedes that it has waived its immunity from suit in state courts on such matters.[20] There is hence no war-

205 F. 91, 93, 95. Had the attorney general's appearance been for the purpose of litigating the merits of the case, and had he been authorized to waive the state's immunity in this manner, a different question would be presented. See Clark v. Barnard, 108 U.S. 436, 448, 2 S.Ct. 878, 27 L.Ed. 780; Ford Motor Co. v. Dept. of Treasury, supra, 323 U.S. 467–469, 65 S.Ct. 352–353.

20. A waiver of immunity from suit in state courts does not waive immunity where the litigation is brought in the federal court. Chandler v. Dix, 194 U.S. 590, 591–592, 24 S.Ct. 766, 48 L.Ed. 1129. To be distinguished from the instant case is Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.

Ct. 785, 3 L.Ed.2d 804, where the named states had entered into a compact approved by Congress whereby they agreed that the defendant bridge commission, created by the two states, should have the power to sue and be sued in its own name. Also to be distinguished are such cases as United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, where the United States was the plaintiff. Under article III, section 2, of the Constitution, the Supreme Court of the United States has original jurisdiction of cases in which a state is a party. Congress may confer on inferior courts concurrent original jurisdiction of such suits. Ames v. State of Kansas, 111 U.S. 449, 4 S.Ct. 437, 28 L. Ed. 482. In United States v. State of

rant for the conclusion that appellant is without a means of obtaining judicial vindication of its asserted rights.

The judgment is affirmed in part and reversed in part, as indicated in this opinion, and the cause is remanded to the district court for further proceedings consistent herewith.

California, supra, it was held that Congress had done this with regard to suits to recover statutory penalties for violation of the Safety Appliance Act, 45 U.S.

C.A. § 1 et seq. Congress has not done this with regard to suits of the kind before us on this appeal.