BARNES, Senior Circuit Judge:
The district court dismissed the State of California as a defendant, in this action, for, inter alia, damages arising from the negligent operation of the Upper Newport Bay Bridge in Orange County, California. The issue before this Court is whether the district court properly concluded that neither the construction and operation of a bridge over navigable waters of the United States, nor enactment of the California Tort Claims Act, waived the state’s sovereign immunity under the Eleventh Amendment to the Constitution. We hold the district court was correct because there has been no express waiver of immunity or consent to be sued in either California’s construction of the bridge or its enactment of a tort claims act.
I. FACTS
On July 18, 1974, at approximately 9:00 p. m., the vessel “MAKO” collided with a portion of the Upper Newport Harbor Bay Bridge in Orange County, California, which spans navigable waters of the United States, and is operated and maintained by the State of California. As a result of this collision, appellant Riggle sustained injuries and incurred substantial medical costs. Invoking admiralty jurisdiction, Riggle filed a personal injury action in federal district court which charged the state in the Second Cause of Action with negligent operation and maintenance of the bridge in violation of both 33 U.S.C. §§ 491, 512 and various provisions of the Code of Federal Regulations, Part 33. Riggle asked $45,000 for medical expenses, $1,400,000 in general damages, and compensation for all lost earnings. The State of California moved to dismiss the Second Cause of Action, claiming Eleventh Amendment immunity. Following a hearing on the merits, the district court gi anted that motion. This appeal followed. It relates only to the Second Cause of Action pleaded/®66 fnA)
II. STATE IMMUNITY
During and after the ratification process of the United States Constitution, the states feared that federal constitutional authority might be construed to allow citizens of another state or foreign states to bring suits against the states in federal court. See Edelman v. Jordan, 415 U.S. 651, 660-662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); New Hampshire v. Louisiana, 108 U.S. 76, 86-88, 2 S.Ct. 176, 27 L.Ed. 656 (1883). When these fears were realized in Chisholm v. Georgia, 2 U.S. (2 Dali.) 419, 1 L.Ed. 440 (1793), the states quickly reacted with ratification of the Eleventh Amendment, which provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
This amendment has been judicially extended to grant a state immunity from federal court suits brought by its own citizens as well as by citizens of another state. *582 Hans v. Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Clark v. State of Washington, 366 F.2d 678, 680 (9th Cir. 1966). The Supreme Court has also construed the amendment to bar a suit in admiralty, such as the instant action, when brought against a state. Ex parte State of New York, 256 U.S. 490, 497-498, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). Moreover, in Edelman v. Jordan, supra, the Supreme Court held that the Eleventh Amendment barred federal court actions seeking damage awards from the public treasury of a state.[1] Thus, because the State of California is clearly named as a defendant in the instant action, and because the recovery sought is clearly a damage award from California’s treasury, appellant’s action is barred unless the state has somehow waived the immunity conferred by the Eleventh Amendment. Although a state may waive its Eleventh Amendment immunity (State of Missouri v. Fiske, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933); Sko-komish Indian Tribe v. France, 269 F.2d 555, 560 (9th Cir. 1959)), such a waiver is not lightly to be inferred. Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353, 1361 (9th Cir. 1977).
Appellant first theorizes that California has waived its immunity by acquiring and operating a bridge in interstate commerce. In support of this argument, appellant cites the Rivers and Harbors Appropriation Act, 33 U.S.C. § 401 et seq., and the Bridgé Act of 1906, 33 U.S.C. § 491 et seq., which, inter alia, require federal consent for the construction of bridges over navigable waters and establish a variety of regulatory standards for the operation of such bridges. It is argued that by seeking and obtaining permission to operate in a sphere of authority subject to the power of the federal government, California has surrendered its immunity in submission to the United States.
At the outset, it must be determined whether either of the federal acts cited by appellant creates a private right of action[2] without which the state of California could neither be held liable to the appellant nor be said to have waived its Eleventh Amendment immunity to suit.[3] Opinion among the circuits on this issue is divided. While the Fourth Circuit in Chesapeake Bay Bridge and Tunnel District v. Lauritzen, 404 F.2d 1001, 1003-1004 (1968) has held that the Rivers and Harbors Appropriations Act does create a private cause of action, the Third, Fifth, and Seventh Circuits have reached contrary results. Williamson Towing Co., Inc. v. State of Illinois, supra, 534 F.2d at 762; Intracoastal Transportation, Inc. v. Decatur County, Georgia, 482 F.2d 361, 366-367 (5th Cir. 1973); Red Star Towing & Transportation Co. v. Department of Transportation of New Jersey, 423 F.2d 104, 106 (3d Cir. 1970). The rule in this Circuit is somewhat unclear. In Alameda Conservation Association v. California, 437 F.2d 1087, 1094-1095 (9th Cir.), cert. denied, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971), this Court concluded *583 that plaintiffs had standing to sue for an injunction restraining Leslie Salt Co. from damaging them as individuals by filling and obstructing portions of San Francisco Bay in violation of 33 U.S.C. §§ 401 — 406, the Rivers and Harbors Appropriations Act. Had the Court not impliedly recognized a private right of action under that act, it could not have reached the question of standing. Passenger Corp. v. Passengers Ass’n, 414 U.S. 453, 456, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Thus, it seems reasonable to conclude that the appellant here has a private cause of action in this Circuit under the Rivers and Harbors Appropriations Act, if not also under the Bridge Act of 1906. See Sierra Club v. Morton, 400 F.Supp. 610, 622 (N.D.Cal.1975); Sierra Club v. Leslie Salt Co., 354 F.Supp. 1099, 1104-1105 (N.D.Cal.1972). See also Cort v. Ash, 422 U.S. 66, 79 n.11, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (Supreme Court’s decision in Wyandotte Transportation Co. v. United States, 389 U.S. 191, 201-202, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) construed as recognizing that United States has private right of action under Rivers and Harbors Appropriations Act).[4] However, the fact that appellant may have an implied private right of action does not necessarily establish a waiver by the State of California of its Eleventh Amendment immunity.
III. STATE’S WAIVER
Congress, had it chosen to do so, could have conditioned California’s operation of bridges over navigable waters on a waiver of Eleventh Amendment immunity. Parden v. Terminal Railway of the Alabama State Docks Dept. 377 U.S. 184, 192, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 281-282, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). Parden found an express waiver in the Federal Employer’s Liability Act, 45 U.S.C. §§ 51, 60, which specifically authorized certain plaintiffs to sue a class of defendants which, the Court held, included the states as operators of railroads. 377 U.S. at 185-190, 84 S.Ct. 1207. Petty held that there was an express waiver in the “sue-and-be-sued” language of an interstate compact taken together with the language of a condition attached by Congress when it approved the compact as required by the Constitution (Article I, § 10, cl. 3). 359 U.S. at 277-278, 281-282, 79 S.Ct. 785.
The Supreme Court’s later decision in Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) stands in sharp contrast to Parden and Petty. In Employees, the Court refused to apply Parden to make the state subject to suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), on grounds that Congress had hot expressly done so and “would not be presumed to take such action silently.” 411 U.S. at 284-285, 93 S.Ct. at 1618.[5] The Court continued:
It is not easy to infer that Congress, in legislating pursuant to the Commerce *584 Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution.
411 U.S. at 285, 93 S.Ct. at 1618. Thus, as the Fifth Circuit concluded in Intracoastal Transportation, Inc. v. Decatur County, Georgia, supra, the decision in Employees added an additional requirement to the test for Eleventh Amendment waiver:
It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable. federal provision, but in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States.
482 F.2d at 365. Accord, Williamson Towing Co., Inc. v. State of Illinois, supra, 534 F.2d at 762 (7th Cir. 1976).
This interpretation of Employees is reinforced by the later decision of Edelman v. Jordan, supra, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 622, where the Supreme Court held that a state’s participation in federal programs under the Social Security Act, 42 U.S.C. §§ 1381-1385, did not constitute waiver of the state’s Eleventh Amendment immunity. Noting that, unlike the statutes construed in Parden and Petty, there was in the Social Security Act no express congressional authorization to sue a class of defendants which included the states, the Court in Edelman concluded:
In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated “by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.” Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909).
415 U.S. at 673, 94 S.Ct. at 1360. Accord, DeLong Corporation v. Oregon State Highway Commission, 233 F.Supp. 7, 19 (D.Ore. 1964), aff’d 343 F.2d 911 (9th Cir.), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965).
Appellant has not cited, nor do we find, any provision in the Rivers and Harbors Appropriations Act or the Bridge Act of 1906 which would amount to congressional authorization of suits against the states, or meet the explicit waiver requirements announced in Employees and Edelman. We therefore conclude that California has not waived its Eleventh Amendment immunity by operating and maintaining a bridge in navigable waters of the United States.[6]
*585 Appellant’s second theory of liability is that, by enactment of its Tort Claims Act (Cal.Govt.Code § 810 et seq.), California waived its Eleventh Amendment immunity to suits in federal courts. This is a question of state rather than federal law as it involves California’s intent in enacting a particular statutory scheme. Parden v. Terminal Railway of the Alabama State Docks Dept., supra, 377 U.S. at 194-196, 84 S.Ct. 1207, 12 L.Ed.2d 233; Petty v. Tennessee-Missouri Bridge Commission, supra, 359 U.S. at 278-279, 79 S.Ct. 785, 3 L.Ed.2d 804. At the same time, however, there are federal guidelines which will aid the Court in its interpretation of California’s legislative intent.
A state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amendment immunity from suit in federal courts. Kennecott Copper Corp. v. Tax Commission, 327 U.S. 573, 577-580, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Great Northern Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). In Great Northern, the Supreme Court held:
When a state authorizes a suit against itself . . . it is not consonant with our dual system for the Federal courts to be astute to read the consent to embrace federal as well as state courts.
322 U.S. at 54, 64 S.Ct. at 877. The Ninth Circuit has been similarly strict. In Sko-komish Indian Tribe v. France, supra, 269 F.2d 555 (1959), the Court was asked to find that by consenting to quiet title actions in its own courts, the State of Washington had consented to suits in federal court. Refusing to accede to this logic, the Court held:
The absence of an express statutory prohibition of suits against the state in federal court is beside the point. An express or implied consent to be sued in federal court, or waiver of immunity from suit in such court, must be found. In our opinion, it is not found in a statutory provision waiving state immunity to suit in a state court.
269 F.2d at 561.
The California Tort Claims Act does not appear to contain a waiver of immunity which extends further than the California state courts. Enacted by the state legislature in 1963, the act recognizes the abrogation of governmental immunity from tort liability announced by the California Supreme Court in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). See 4 Witkin, Summary of California Law, Torts §§ 79, 82. At the same time, however, the act abolished all common law tort liabilities of public entities (Cal.Govt.Code § 815), and created instead a scheme whereby public entities are liable in tort only to the extent declared by statute. See. City of Orange v. Valenti, 37 Cal.App.3d 240, 245, 112 Cal.Rptr. 379 (1974). See also Witkin, Summary of California Law, supra. Thus, for example, while the California Govt.Code § 945 provides that “[a] public entity may sue and be sued,” some other statute must be found which imposes substantive liability. Law Revision Commission Comment to § 945. See also Cal.Govt.Code § 944 (“Nothing in this part [including § 945] imposes liability upon a public entity unless such liability otherwise exists.”)[7] Moreover, Cal.Govt. *586 Code § 955.2 (the venue statute of California’s Tort Claims Act),[8] seems to indicate that California’s consent to be sued in tort is intended to apply only to state courts. See State of California v. Superior Court, 238 Cal.App.2d 691, 695, 48 Cal.Rptr. 156, 158 (1965) (phrase “Notwithstanding any other provision of law” in § 955.2 includes federal law under Cal.Govt.Code § 811 and thus seems to make § 955.2 the exclusive venue rule in any action or proceeding described in which the state is named as defendant).[9]
IV. CONCLUSION
Appellant’s tort action for damages against the state of California is barred, there having been no waiver by the state of its Eleventh Amendment immunity. The district court, therefore, properly dismissed California as a party defendant. The judgment is AFFIRMED.

. The holding in Edelman applied specifically to an award of retroactive payments to welfare recipients. However, we find no basis for distinguishing retroactive welfare payments from tort damages for purposes of applying Edelman to this case. See Fitzpatrick v. Bitzer, 427 U.S. 445, 451, 96 S.Ct. 2666, 2668, 49 L.Ed.2d 614 (1976) (payments barred in Edelman were “indistinguishable from a monetary award against the State itself which had been prohibited in Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945).”) (emphasis added); Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (Edelman would bar plaintiff “seeking damages from the public treasury”).

. Ostensibly, both acts are primarily designed to be enforced through criminal penalties. E. g., 33 U.S.C. §§ 406, 411, 495, 499, 502, 507, 519, 533.

. In his complaint, appellant alleges that the state violated 33 U.S.C. §§ 491 and 494. We suggest that the state cannot be held liable for violation of those statutes because the word “person” as used in those sections does not include states. 33 U.S.C. § 497. See Williamson Towing Co., Inc. v. State of Illinois, 534 F.2d 758, 761 n.2 (7th Cir. 1976). However, appellant also alleges violation of 33 U.S.C. §§ 403 and 512, neither of which appear to have the restricted scope of §§ 491 and 494. We therefore conclude that the question of a private right of action is not moot.

. The complaints in Alameda Conservation Association v. California, supra, Sierra Club v. Morton, supra, and Sierra Club v. Leslie Salt Co., supra, were for declaratory and/or injunc-tive relief. Thus, there may be some question whether the private right of action in those decisions extends to damage actions such as the instant case. However, the opinion by Judge Renfrew in Sierra Club v. Morton, supra, states that one of the purposes for implying a private right of action under the Rivers and Harbors Appropriation Act is to effectuate the congressional policy of redressing injuries to private parties. 400 F.Supp. at 625. But see Sierra Club v. Leslie Salt Co., supra, 354 F.Supp. at 1104 (“. . it is the law in the Ninth Circuit that a claim for injunctive relief for violation of 33 U.S.C. § 403, otherwise sufficient, should not be dismissed . . . ” [emphasis added]). Given the Eleventh Amendment immunity which we conclude California has in this case, we hold that, we should assume, without necessarily deciding, that under the facts of this case, the implied right of action extends to damage suits, as well as to suits for declaratory or injunctive relief.

. In reaching the conclusion that “Congress did not lift the sovereign immunity of the States under the FLSA,” 411 U.S. at 285, 93 S.Ct. at 1618, the Supreme Court balanced the financial impact of an Eleventh Amendment waiver against the nonprofit nature of the state activities in question, the pervasiveness of liability which might result from the waiver, and the availability of alternative forms of relief. 411 U.S. at 284-286, 93 S.Ct. at 1614. Although the Court’s subsequent decision in Edelman v. Jordan, supra, appears to have taken a more categorical approach to the Eleventh Amendment, we conclude the three factors considered *584 in Employees to outweigh the propriety of finding an Eleventh Amendment waiver also outweigh a waiver in this case. First, there is no indication that California collects tolls or otherwise makes a profit from operation of the Upper Newport Bay Bridge. Second, waiver of immunity in this case could expose California to a broad category of tort claims in federal court, implicating many state operations affected by federal regulatory schemes. Third, appellant does not seem to have been without an alternative remedy. Having made a timely claim to the state (CT 5), there does not appear to be any reason why appellant could not have filed a tort claims action in the state court alleging that his injuries were proximately caused by a dangerous condition of the state’s property. See Cal.Govt.Code § 835. See also RT 21, 30-31.

. Furthermore, to the extent that some courts have based a finding of waiver on the quality or degree of state participation in federally regulated activities (see, e. g., Green v. State of Utah, 539 F.2d 1266, 1273-1274 (10th Cir. 1976)), we could well find that California has not waived its Eleventh Amendment immunity. Under 33 U.S.C. § 401, bridges over navigable waters cannot be built without approval of Congress, the Chief of Engineers, and the Secretary of the Army. However, if the bridge is to span navigable waters “wholly within the limits of a single State,” § 401 authorizes state legislature to construct the bridge with only the approval of the Chief of Engineers and the Secretary of the Army. Construction of the Upper Newport Bay Bridge appears to have been authorized under this latter proviso. (Appellant’s Brief, Exhibit A). Thus, it would seem that California’s participation in the federal scheme of bridge regulation is at a minimum level and is certainly far more passive in nature than the active participation in a federally regulated scheme which has been considered by other courts. Green v. State of Utah, supra. See also Edelman v. Jordan, supra, 415 U.S. at 688-689, 694-695, 94 S.Ct. 1347, 39 L.Ed.2d 622 (Marshall, J., dissenting).

. Of similar effect is Article 3, § 5 of the California’s Constitution (formerly Article 20, § 6), which provides:
Suits may be brought against the state in such manner and in such courts as shall be directed by law.
This provision has been strictly construed by California courts. People v. Birch Securities Co., 86 Cal.App.2d 703, 712, 196 P.2d 143 (1948), cert. denied, 336 U.S. 936, 69 S.Ct. 745, 93 L.Ed. 1095 (1949) (federal judgment against state tax commissioner was neither res judicata nor collateral estoppel in suit by state for taxes due where state had not specifically provided for tax refund suit against the state). In Rose v. State of California, 19 Cal.2d 713, 723, 123 P.2d 505, 512 (1942), the California Supreme Court held this provision to be permissive rather than mandatory, enacted “to enable the legislature to specify what suits, other than those already provided for, might be brought against the state, and to prescribe the manner for so doing, and the courts having jurisdiction thereof,” (emphasis added). See also the early case Galbes v. Girard, 46 F. 500 (9th Cir. 1891) where this Court, in construing the same provi *586 sion of the California Constitution in the context of a sovereign immunity argument held: But the legislature of the state has not enacted any law authorizing the bringing against the state of such a suit as the present [es-cheat action]. Until it does so, the suit, so far as the state is concerned, cannot be maintained.
46 F. at 501.

. “Notwithstanding any other provision of law . . . the proper court for the trial of the action is a court of competent jurisdiction in the county where the injury occurred or where the injury causing death occurred.”

. Venue statutes have been used to determine the scope of a state’s waiver of immunity. Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Ins. Co. v. Read, supra, 322 U.S. at 54-55, 64 S.Ct. 873 (1944); Smith v. Reeves, 178 U.S. 436, 441, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).