**ALAMEDA CONSERVATION ASSOCIA-TION et al., Appellants,**

v.

**STATE OF CALIFORNIA et al.,
Appellees.**

No. 22961.

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1971.

Certiorari Denied April 19, 1971.
See 91 S.Ct. 1380.

Funsten & Caldwell, James Funsten, and David B. Caldwell, San Francisco, Cal., for appellants.

Ralph Dau, argued, of O'Melveny & Myers, Thomas C. Lynch, Atty. Gen., Jay L. Shavelson, Asst. Atty. Gen., N. Gregory Taylor, Deputy Atty. Gen., Los Angeles, Cal., Landels, Ripley, Gregory & Diamond, San Francisco, Cal., for appellees.

Before HAMLEY, MERRILL and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The Alameda Conservation Association and eight of its members appeal from the dismissal of their action brought against the State of California, the Leslie Salt Company and others in the District Court for the Northern District of California.

The Association is a non-profit corporation having as one of its purposes the protection of the public interest in the waters of San Francisco Bay. The eight individual plaintiffs are among its members.

By their First Amended Complaint the plaintiffs seek: (1) to enjoin the defendants from completing a land exchange; (2) to declare 1959 California Statutes Chapter 1885 unconstitutional; (3) to enjoin Leslie Salt Company from filling or obstructing the bay; (4) to secure a general declaration of the rights of the people to the waterways and wildlife areas of the bay; (5) finally, to impanel a three-judge court.

The jurisdiction of the district court was invoked by the complaint under:

"* * * (a) The Rivers and Harbors Appropriation Act of 1899, 33 U.S.C.A. Section 401, 403 and 406; (b) Article 1, Section 8, Clause 3, of the United States Constitution, comonly known as the Commerce Clause; (c) Section 3 of the Act of Congress for the Admission of the State of California into the Union, Volume 9, U.S. Statutes at Large, Pages 452 and 453; (d) The Swamp Act, September 28, 1850, 9 U.S. Statutes at Large 520 [43

U.S.C.A. § 981 *et seq.*] ; (e) The Act to Quiet Land Titles in California, 14 United States Statutes at Large, Chapter 218; and (f) Section 1 of the 14th Amendment to the Constitution of the United States of America [43 U.S.C. § 987].

\* \* \* \* \* \*

\* \* \* and upon Title 28 U.S.C. Sections 1331 and 1337." C.T. 11.

The defendants moved to dismiss the action and to discharge two previously issued orders to show cause. The district court on April 2, 1968, granted the defendants' motion for failure of the complaint to state a claim upon which relief could be granted and also denied the request for a three-judge court. Jurisdiction in this court is based upon 28 U.S.C. § 1291.

After describing San Francisco Bay and outlining its importance, the complaint alleges that the defendant Leslie Salt Company claims to be the owner of 52,000 acres of submerged lands, tidelands, and swamp and overflow lands which Leslie contends it holds free from any public trust. Plaintiffs allege that said claims are defective in several respects which plaintiffs outline. The complaint then recites the enactment of 1959 California Statutes, Chapter 1885, providing for exchanges of land under specified conditions and alleges that an exchange of lands of San Francisco Bay is pending thereunder between the State of California and the Leslie Salt Company. Finally, the complaint alleges that the Leslie Salt Company has filled in thousands of acres of submerged lands and tidelands of the bay illegally and will fill in additional great portions of San Francisco Bay illegally unless restrained. The complaint then alleges that the plaintiffs reside upon and own real property so close to the bay that their health and the enjoyment of their property is materially affected by the filling of the bay and that they will be irreparably injured unless further obstruction and filling by Leslie is restrained. The injury is alleged to include;

" \* \* \* destruction of fisheries and wildlife from which plaintiffs personally benefit and destruction of the flushing characteristics of the San Francisco Bay and its climate [sic] cooling affect [sic] \* \* \*."

The complaint was verified.

We agree with the court's decision as to the defendant Title Insurance and Trust Company and as to the State of California and the state defendants, hereinafter referred to collectively as the State; we disagree in part with the court's decision as to the defendant Leslie Salt Company.

■ The only relief sought against the Title Insurance and Trust Company was that it be enjoined from participating in proceedings to complete or quiet title to the exchange of lands described in the complaint between the State and Leslie. The exchange was completed prior to the filing of the complaint and the Title Company would have no interest in a quiet title proceeding. The matter is therefore moot. Brockington v. Rhodes, 396 U.S. 41, 90 S.Ct. 206, 24 L. Ed.2d 209 (1969) ; McKee & Co. v. First National Bank of San Diego, 397 F.2d 248 (9th Cir. 1965) (per curiam).

### STANDING

With respect to the other parties we are confronted at the outset with the issue of standing. Each of the defendants asserts that none of the plaintiffs has standing to prosecute the action. The district court agreed and we therefore proceed to that issue.

■ It is alleged that the Alameda Conservation Association is a nonprofit corporation and has as one of its purposes the protection of the public interest in the waters of the San Francisco Bay. C.T. 11. Without more, this does not qualify the corporate entity to sue to declare the statute in question unconstitutional or to enjoin the acts of the public officials. The Association does not assert that any of its rights or properties are being infringed or threatened. Sierra Club v. Hickel, 433 F.2d 24 (9th Cir.

1970). It simply is not hurt in any practical way which entitles it to call upon the courts for redress or protection.

Standing is not established by suit initiated by this association simply because it has as one of its purposes the protection of the "public interest" in the waters of the San Francisco Bay. However well intentioned the members may be, they may not by uniting create for themselves a super-administrative agency or a *parens patriae* official status with the capability of over-seeing and of challenging the action of the appointed and elected officials of the state government. Although recent decisions have considerably broadened the concept of standing, we do not find that they go this far.[1]

Were it otherwise the various clubs, political, economic and social now or yet to be organized, could wreak havoc with the administration of government, both federal and state. There are other forums where their voices and their views may be effectively presented, but to have standing to submit a "case or controversy" to a federal court, something more must be shown.

The dissent urges that the Association although a corporation and thus a legal entity separate and apart from its members, has standing. The corporation does not allege that it owns land bordering or near the bay or at all. It does not assert that it has any property interests of any kind real or personal which would sustain "injury in fact", economic or otherwise, as a result of any of the de-

fendants' activities. As a matter of fact, the only direct reference to the status of the corporation is in the introductory paragraph of the amended complaint which describes it as a non-profit corporation and states that all of the individual plaintiffs are members and that all of its members are residents of the State of California. Thereafter, the references in the complaint with respect to standing qualifications, refer to the individual plaintiffs and not the corporate plaintiff. However it is urged that standing exists in the corporation upon the basis of the "nexus" doctrine. The suggestion is that the corporation may assert its members rights because it is in the best position to do so. Moreover, the Association's "nexus" with its members gives it standing to appear as their representative in federal courts, it is asserted.

"Nexus" with relation to standing was discussed in Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). But the nexus the court was concerned with there was the link between the seven taxpayer appellants and the type of legislative enactment being attacked and the nature of the constitutional infringement alleged. It had nothing to do with the relationship between a corporation and its members or shareholders. The primary purpose in forming a corporation in most instances is not to give to the corporation an interest in the member's real property or other assets. Just the opposite. It is to be sure that the member's property interests will not be jeopardized by his as-

---

1. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), was a taxpayer's suit with definite First Amendment associations; Association of Data Processing Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), was a competitor's suit; Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), was a tenant farmers' suit challenging regulations which directly affected their businesses. Associated Industries v. Ickes, 134 F.2d 694 (2nd Cir. 1943), which announced the "private Attorney Generals" doctrine, *Id.* at 704, founded it upon a provision of the Bituminous Coal Act of 1937, 15

U.S.C. § 828. Section 6(b) of the act expressly authorized "any person aggrieved by an order issued by the commission in a proceeding to which such person is a party" to seek review by a petition in an appropriate United States Court of Appeals. The petitioner there was such a coal consumer and such a person. *Id.* at 699. Whether in every instance a group which is permitted to appear at an administrative hearing creates standing to sue for itself which it did not have before such appearance, is a question which we are not required to pass upon here.

sociations with others. It is not to create a nexus but to disconnect the member from the organization as to property, assets or liability. Nor does the fact that the corporate purposes are akin to those of its members make the corporation the authorized spokesman for the purpose of asserting its members constitutional rights. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). If the Association here had a recreational operation which it conducted and which the defendants interfered with, it could assert it; if its physical surroundings were made unattractive, this aesthetic infringement would create standing; or if it operated a conservation program, an interference with that operation would establish standing.[2] The point is that the standing necessary to assert as a litigant must be that of the litigant.

As stated in *Flast, supra,* standing focuses on the party seeking to place his complaint before the court, rather than the issue to be decided and the question is whether or not that party has a sufficiently personal stake in the outcome as to justify the court in entertaining his petition. A corporate interest in one or more of its stated purposes and ideals may change depending upon the constituency of its board of directors. Its preoccupation with one particular aspect of its chartered goals may wax or wane depending upon who is at the helm. Not so with the applicant at the judicial door who will himself sustain injury in fact, economic or otherwise.[3]

Here, in addition to membership in the Association, four of the individual plaintiffs assert that they own property or interests therein which actually border the bay or properties which are on lagoons which are flushed by the bay and that they live on such lands. It is alleged that some of the threatened action will include "destruction of fisheries and wildlife from which plaintiffs personally benefit" and will destroy the flushing characteristics of the bay affecting the climate around them.

However inartfully drawn, these allegations charge an invasion of the personal interests of those four complainants who have property bordering the bay or its lagoons and reside thereon that will result personally and directly in an adverse affect upon them.

Having come to that conclusion it is not necessary for me to reach the question of standing as to the other individual plaintiffs and I do not do so. See Office of Communication of United Church of Christ v. F. C. C., 123 U.S. App.D.C. 328, 359 F.2d 994, 1006 (1966).[4] I only decide that these four individuals who allege that the activities which they question will cause injury in fact to them, have sufficiently alleged standing.

The rationale of *United Church of Christ* is that the number of parties litigant may be limited to the number nec-

---

2. Association of Data Processing Organization, Inc. v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

3. The cases cited in the dissenting opinion illustrate standing problems in the context of a variety of situations. Most are clearly distinguishable, having to do with First Amendment rights, and clear cases of direct impact on the complainant. Citizens Association of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175, 176 (1968), in a short per curiam opinion makes the perfunctory statement quoted in the dissenting opinion which is contra to the position taken here and not supported by the cases cited in its own footnote.

4. After discussing the competing considerations of commission efficiency and unlimited audience participation in licensing procedures, Judge Burger said:

    " * * * we do not now hold that all of the Appellants have standing to challenge WLBT's renewal. We do not reach that question. As to these Appellants we limit ourselves to holding that the Commission must allow standing to one or more of them as responsible representatives to assert and prove the claims they have urged in their petition." Office of Communication of United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 359 F.2d 994, 1006 (1966).

essary to adequately present the issues which have been set out.[5] That rationale is applicable here for two reasons. The interests that are asserted by those near the bay include the interests asserted by those farther from the bay. All the interests that are asserted can be presented to the court by those who have been accorded standing. Second, the relief sought by those near the bay is the same as that sought by all the other parties, thus no prejudice will be suffered by declining to decide the standing of the other plaintiffs. *Cf.* Benton v. Maryland, 395 U.S. 784, 798, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969) (White, J., concurring). Hence, I conclude that the plaintiffs before this court will adequately represent all of the issues before the court, and I think it unnecessary to decide whether to accord standing to the remaining plaintiffs. The policy of judicial restraint provides an additional reason for this conclusion. The principle is widely held that decisions of far reaching effect should not be made when not necessary to do so. *E. g.*, Zschernig v. Miller, 389 U.S. 429, 444, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968) (Harlan, J., concurring); Rescue Army v. Municipal Court, 331 U. S. 549, 568, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); Ashwander v. Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); State of Texas v. Grundstrom, 404 F.2d 644, 648 (5th Cir. 1968); Taylor v. United States, 320 F.2d 843, 846 (9th Cir. 1963), cert. denied, 376 U.S.

916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964).[6] While this principle is in most instances limited to constitutional and jurisdictional issues, I find it an axiom of judicial restraint which is applicable to the case here where the plaintiffs that have been accorded standing will be able to obtain relief adequate to protect all of the interests brought before the court.

■ The majority of the panel would accord standing to all of the individual plaintiffs, and that view, therefore, becomes the decision of the court upon this point. In my view, the four plaintiffs whose land abuts the water have alleged damage and that allegation is sufficient to supply justiciability and standing. Nothing more need be decided to support this litigation.

My disagreement with the majority upon this issue is essentially the problem of where to draw the line between those parties whose interests are proximate and thus have standing and those whose interests are remote and do not. Any attempt to fix the exact boundary between regions of proximity and remoteness, cloaked by whatever language of reasonableness, ends by being an arbitrary line. Granted that such lines are difficult and of necessity must at times be drawn; there is no reason to draw such a line here. Another difficulty is presented by the nature of the meager record before this court. Even as to the four plaintiffs who have been accorded standing the information is not plentiful. The

5. I recognize as did Judge Burger that *United Church of Christ* originated as a proceeding before the Federal Communications Commission at which certain litigants were denied standing. Office of Communication of United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 359 F.2d 994, 1000 n. 8 (1966). By statute, 47 U.S.C. § 309(a), such a proceeding is one in the nature of a determination of the public convenience and necessity and a "party in interest" is entitled to appear. Having appeared he may have standing to appeal under another section of the same chapter, 47 U.S.C. § 402(b) (6), or under the provisions of the Administrative Procedure Act, 5 U.S.C. § 702. Thus, *United Church of Christ*, like many similar agency cases, is quite dif-

ferent from this case originating in the district court. Nonetheless, I do not regard Judge Burger's comments inapposite as applied in the context of the present case.

6. In Flast v. Cohen, 392 U.S. 83, 94–99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Court recognized that standing, being an aspect of the justiciability limitation imposed by the case-and-controversy doctrine, was a similar blend of constitutional limitations and policy considerations, including those considerations relating to judicial restraint formulated by Justice Brandeis in his often quoted concurrence in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

only knowledge about the other plaintiffs comes from the allegations of the amended complaint. Most of them are alleged to own property or interests in property "within a mile" of the bay. Dolores Dodd is alleged to be "a tenant upon certain real property which is located within six miles of the navigable waters of the San Francisco Bay." All are alleged to reside at the locations described and assert that their health and their enjoyment of their property will be affected by the alleged unlawful acts of the defendants. Of necessity, a line encompassing all is more likely to have effects beyond this court's perception and control. I am reluctant to unleash such potential when it is unnecessary to do so.

## THE STATE OF CALIFORNIA

The relief sought by the amended complaint against the State was that the "defendants and each of them be enjoined from participating in any proceedings to complete or quiet title to the above-referred to purported exchange of lands * * *." C.T. 24. Insofar as an injunction to prevent the completion of the exchange is concerned, counsel for plaintiffs frankly acknowledged to the district judge that the exchange had been completed prior to the filing of the complaint and that this portion of the prayer for relief had become moot. R.T. 17. Brockington v. Rhodes, *supra*; McKee & Co. v. First National Bank of San Diego, *supra*.

As to the remainder of the relief sought against the State, counsel stated to the court:

> " * * * we allege there is apparently intent to have a consent quiet title between Leslie and the State of California in the State Courts, and we do ask that be enjoined." R.T. 17.

The intent as alleged is uncertain; the proceedings are undefined for purposes of an injunction; and an assumption must be made that the parties and the courts will combine to produce an illegal act. We cannot frame a decree on such a tenuous foundation.

28 U.S.C. § 2281, providing for three-judge courts, is not to be viewed as a measure of broad social reform to be construed with great liberality but as an enactment which is technical in the strict sense of the term and to be applied as such. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). It should not be invoked unless the constitutional question is a substantial one. *Id.* at 115, 86 S.Ct. 258. Here the passage of title by transfer of title documents had been completed. There could be no effect on plaintiff's titles in a quiet title action without service of process upon plaintiffs involving notice and an opportunity to be heard. We do not believe that the situation is one within the meaning and purpose of the statute. The district court correctly concluded that 28 U.S.C. § 2281 did not apply and that a three-judge court should not be impaneled.

Likewise the plaintiffs have no standing to ask the court to cancel deeds or documents of title for the reason that 1959 California Statutes, Chapter 1885, is unconstitutional. Whether the title to lands described by the statute is in the State or is in an individual or corporation does not affect any of the plaintiffs, nor does the complaint contain an allegation that it does. What the owner or holder does with the lands may or may not affect the plaintiffs. The existence of a putative "adversary interest" is not sufficient to confer standing. "There must in addition be some connection between the official action challenged and some legally protected interest of the party challenging that action." Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1850, 23 L.Ed.2d 404 (1969). Furthermore, a federal court will not render an advisory opinion on the constitutionality of a state statute concerning a potential or anticipated effect from the operation of the statute which may or may not occur. Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L. Ed.2d 113 (1969). The question is whether there exists " 'a substantial controversy, between parties having ad-

verse legal interests, of sufficient immediacy and reality' " to warrant an adjudication. 394 U.S. at 108, 89 S.Ct. at 959–960. The circumstances of this case do not show such immediacy or reality.

## LESLIE SALT COMPANY

■ The only issue of substance upon which the individual plaintiffs may rely under the present posture of the case to invoke the jurisdiction of the court is that created by the allegation that the continued filling and obstruction of the bay by the defendant Leslie Salt Company operates to cause the destruction of:

"fisheries and wildlife from which plaintiffs personally benefit and destruction of the flushing characteristics of the San Francisco Bay and its climate [sic] cooling affect [sic] * * * " C.T. 23.

It is alleged that Leslie intends to and will, unless restrained, fill and obstruct great portions of the bay in violation of 33 U.S.C. §§ 401–406 which will result in damage to the plaintiffs. 33 U.S.C. § 403 provides that it shall not be lawful to excavate or fill any port, harbor or the channel of any navigable water of the United States unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to the beginning of the work.[7]

In this instance the record discloses that the court made inquiry of the Corps of Engineers concerning its position pursuant to the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401–406, but no response was obtained. Representatives of the Corps of Engineers were subpoenaed to testify at one hearing at the instance of the plaintiffs but were dismissed by the court without requiring them to testify or produce documents subpoenaed.

R.T. 70. From these allegations it would appear that there is a sufficient claim that the defendant Leslie has been engaged in, is now continuing to engage in, and will engage in unlawful action in the future, unless restrained: to wit, the obstruction and filling of large portions of San Francisco Bay. It would appear that there is a sufficient claim that this action is unlawful because it is in violation of a statute of the United States, 33 U.S.C. § 403. And finally, the amended complaint alleges that this unlawful activity would cause damage and injury to the plaintiffs personally or to some of them.

As we have recently said in a situation which is somewhat similar, a preliminary injunction should not issue in a doubtful case. Sierra Club v. Hickel, *supra*. We do not believe that the individual plaintiffs have here established the strong likelihood or reasonable certainty that they will ultimately prevail which would justify the grant of a writ. Garlock, Inc. v. United Seal, Inc., 404 F.2d 256, 257 (6th Cir. 1968).

We therefore agree with the action taken by the district court in discharging the orders to show cause and we also agree with the district court in its denial of the request for a three-judge district court.

In considering a motion to dismiss, the allegations of the complaint are taken as true, and the complaint is liberally construed in favor of plaintiff. Jenkins v. McKeithen, *supra*, 395 U.S. at 421, 89 S.Ct. 1843. "The complaint should not be dismissed unless it appears that appellant could 'prove no set of facts in support of his claim which would entitle him to relief.' " Jenkins v. McKeithen, *supra*, 395 U.S. at 422, 89 S.Ct. at 1849 (citation omitted); Corsican Productions v. Pitchess, 338 F.2d 441, 442 (9th

---

7. 33 U.S.C. § 403 in pertinent part provides:

"[I]t shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

Cir. 1964). We do not say that an injunction should issue or other relief granted. What we do say is that here the matters charged in the complaints of the individual plaintiffs were not developed to the point of sufficient clarity and finality that the proceedings should be dismissed on motion.

The majority of the court holds that the individual plaintiffs have sufficiently alleged standing to sue, for the court to proceed to a hearing of their allegations; Judge Hamley would also accord standing to the Association and from the contrary view of the majority, he therefore dissents; Judge Trask would accord standing only to four of the individual plaintiffs and from a contrary view of the majority in this regard he respectfully dissents.

That portion of the court's order which dismissed the proceedings in their entirety is reversed and the matter is remanded for further hearing in accordance with this opinion.

HAMLEY, Circuit Judge (Separate Opinion):

I

As stated by Judge Trask, his opinion represents the decision of the court on all issues except as to the standing of the individual plaintiffs.

Judge Merrill and I, speaking for the court, hold that all eight of the individual plaintiffs have standing to prosecute this suit. This would accord standing not only to the four individual plaintiffs (Helen L. Freeman, Doris S. Chapman, Walter S. Cooper and Helene Corker) who own property or interests in property, upon which they reside, bordering San Francisco Bay or lagoons flushed by the Bay, but also to:

Elinore B. Coffman and Sally Krusi Pollard, who own and reside on property located within one mile of the navigable waters of the Bay.

Luman C. Drake, who resides within one mile of the navigable waters of the Bay.

Dolores Dodd, who is a tenant residing upon property located within six miles of the navigable waters of the Bay.

These four individual plaintiffs, as well as the four whose standing is recognized by Judge Trask, allege that some of the threatened action will include destruction of fisheries and wildlife from which plaintiffs personally benefit, and will destroy the flushing characteristics of the Bay affecting the climate around them. While the properties upon which these four plaintiffs reside do not border the Bay or its lagoons, this is not a controlling circumstance.

Since San Francisco Bay is not the private preserve of those who own property and reside on its shores, persons not so situated, who assert susbtantial reasons why they are personally damaged by what Leslie Salt Company is assertedly doing to the Bay, ought to be able to litigate their grievances. Whether they will be able to prove such allegations is another matter.

The practical effect of declining to decide whether these four individuals have standing is to deny them standing without giving reasons for such action. It may be appropriate to leave the question of the standing of some plaintiffs undecided in a case such as Office of Communication of United Church of Christ v. F. C. C., 123 U.S.App.D.C. 328, 359 F.2d 994 (1966), where the general issue was one of public convenience and necessity and other plaintiffs could adequately present the public side of that issue. But each of the eight individual plaintiffs in the case before us seeks to prosecute not only a class action but his own individual action based upon allegations of personal damage to himself. Under these circumstances, none of them should be shunted to the sidelines simply because others, asserting similar personal and class action claims, may (or may

not) obtain judicial relief which will redound to the benefit of all plaintiffs.

## II

I concur in all other holdings announced in Judge Trask's opinion except his holding, concurred in by Judge Merrill, that Alameda Conservation Association (Association) does not have standing to prosecute this action to stop what is alleged to be the unlawful conduct of Leslie Salt Company (Company) in filling in thousands of acres of submerged lands and tidelands in San Francisco Bay. For the reasons stated below, I dissent from this ruling by the court.

The Association is a non-profit corporation having for one of its purposes, the protection of the public interest in the waters of San Francisco Bay. The members of the Association are all inhabitants of the state of California. As the name indicates, the Association is interested in the welfare of Alameda County, which borders the Bay.

The Association and the individual plaintiffs allege that, by reason of the Company's activity in filling in the Bay, the waters of the Bay are being polluted; the quantity of shellfish, finfish, waterfowl and other wildlife is being substantially reduced; the value of the Bay as a facility for the production of salt is being diminished; the Bay is becoming less desirable and less suited for pleasure-boating and other recreations; by reason of the reduction in navigable waters and the construction of dikes and other obstacles, the Bay is becoming less useful for the purposes of commercial transportation; and the climate in the adjacent area is being adversely affected by the substantial reduction in the water-surface area in the Bay.

In my opinion, these allegations concerning interference with plaintiffs' enjoyment of the aesthetic, conservational and recreational values associated with San Francisco Bay amply establish their standing to prosecute this suit.

The majority may be right in saying, in effect, that these allegations do not satisfy the test of a recognized legal interest. But that test was knocked out by the recent Supreme Court decisions dealing with standing. *See* Davis, The Liberalized Law of Standing, 37 U.Chi. L.Rev. 450, 453 (1970).

The new test of standing has two prongs. There must be injury in fact, economic or otherwise, to satisfy the "case" or "controversy" requirement of Article III of the Constitution. And the interest sought to be protected must be arguably within the zone of interests to be protected or regulated by the statute or guarantee in question. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). In my opinion, whatever the facts may turn out to be, the allegations of the amended complaint satisfy both facets of this test. In the *Data Processing* case, the Supreme Court specifically stated that the element of legal wrong need not be economic in nature, but may be aesthetic, conservational or recreational. 397 U.S., at 154, 90 S.Ct. 827.

The Association is in the best position to assert these wrongs not only on behalf of itself, but on behalf of all its members. It can do so more effectively, and with less difficulty from the standpoint of judicial administration, than if all of the individual members were to come to court.

The Association may assert these rights on its own behalf because, though a corporation, it is directly engaged in preserving these rights. *See* N. A. A. C. P. v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); National Student Association v. Hershey, 134 U.S. App.D.C. 56, 412 F.2d 1103, 1120–1121 (1969). Moreover, the Association's nexus with its members gives it standing to appear as their representative in federal courts. *See* N. A. A. C. P. v. Alabama, 357 U.S. 449, 458–459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). As the District of Columbia Court of Appeals said in Citizens Association of George-

town v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175, 176 (1968):

> "Since the association is an authorized spokesman organized to promote these interests for its individual members, it too has standing to sue in order to protect their interests." (Footnote omitted.)

MERRILL, Circuit Judge, concurring in part with Circuit Judge TRASK and in part with Circuit Judge HAMLEY:

I. *Standing of the Individual Plaintiffs*

■ I agree with Judge Hamley that all individual plaintiffs have sufficiently alleged a threat of injury in fact and have standing.

The threatened injury here alleged is to the Bay. In my view, injury in fact to individuals is threatened if their relationship to the Bay, through proximity of residence or regularity of use, is such that in their normal activities injury to the Bay of the type alleged cannot but affect their esthetic, recreational or environmental interests. Such is the case here.

Future cases may well present problems as to whether plaintiffs fall within a recognizable zone of injury in these respects, or whether, on the contrary, their injury is merely *de minimis*. It is conceivable that lines of proximity may have to be drawn. This case, however, does not present such problems.

II. *Standing of the Association*

■ I agree with Judge Trask that the Association does not have standing.[1]

As Judge Trask points out, the Article III limits of case and controversy still serve to define the area of justiciable dispute. The courts do not deal with abstract principles of public welfare but with the individual rights presented by the litigants.

As the Supreme Court in Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), points out, the existence of injury in fact on the part of the plaintiffs is still the badge of case and controversy in private actions. Where, as here, the case presents issues of public moment—where what is at the heart of the problem is an alleged injury common to a substantial segment of the public—it may well be that the common cause can better and more earnestly be presented through an association of those affected than through a collection of individuals each tendering his own modest share of the common injury.

However, the traditional requirement that the subject matter of litigation be rights and injuries in fact serves not only to assure true adversary presentation of the issues; it also provides the *res* upon which *res judicata* can operate. It serves to assure that litigation on its conclusion will settle the matter as between the adversaries. The joining of an association as party can hardly give such assurance as to those it purports to represent since the rights of its members

---

[1] The standing problem here is different from that posed in those cases in which plaintiff brings a "public action" in which he does not assert a special interest apart from that of the public generally. This court has recognized that, in such cases, statutory authorization is required before an organization may tender the rights of the public. Sierra Club v. Hickel, 433 F.2d 24 (9th Cir. Sept. 16, 1970). *See* Scenic Hudson Preservation Conf. v. FPC, 354 F.2d 608 (2d Cir. 1965); *cf.* Scripps-Howard Radio, Inc. v. FPC, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942).

Furthermore, as Judge Trask notes, this is not a case in which the Association, as an individual corporate entity, is alleging injury to itself. *See* NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); National Student Association v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103 (1969). Nor is it a case in which the organization's members are unable to seek protection in the courts without themselves sacrificing the very rights for the protection of which suit was brought. *See* NAACP v. Alabama, 357 U.S. 449, 458–459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). On the contrary, the Association here claims standing simply as a representative of its members.

are not tendered for adjudication.[2]  Individual members are free to relitigate so long as imaginative counsel can find an escape from *stare decisis*.  Any apparent enlargement of the dispute to something akin to a class action is wholly illusory.

When the *rights* of its members are not before the court, all an association can do is represent their views.  The judicial process allows room for this representation through appearance as *amicus curiae*.  Further, organizations such as the Association, through contemporary and benign forms of champerty and maintenance, can provide useful functions of encouragement and assistance to those actually possessing judicially protectable interest.  *Cf.*, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).  They should, however, recognize that when the forum chosen for assertion of their views is a court of law and the action sought is judicial, rather than political or administrative, they cannot play the part of actor without themselves possessing or tendering rights of which the court can take cognizance.

### III.  *Other Issues*

In all other respects I concur with Judge Trask.

2. It may be that, under the appropriate circumstances, an organization which is likely to be a vigorous party in the presentation of its case and which can demonstrate express authorization of its members should be able to present its members' interests for litigation.  We need not prejudge that question here, where there has been no such express assignment.