Carl A. PETTERSON and Martha A. Petterson, his wife, et al., Plaintiffs,

v.

Stanley S. RESOR, individually and as Secretary of the Army of the United States, et al., Defendants,
and
The Port of Portland, a municipal corporation, Intervener-Defendant.

Civ. No. 71–283.

United States District Court,
D. Oregon.

Oct. 4, 1971.

Marvin B. Durning, Durning, Prince & Smith, Seattle, Wash., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Jack G. Collins, First Asst. U. S. Atty., Portland, Or., for defendants.

Lofton L. Tatum, Donald J. Morgan, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for intervener-defendant.

## OPINION

SOLOMON, Judge:

The Port of Portland (Port) adopted a comprehensive plan to improve and expand the Portland International Airport (Airport) by enlarging the airport terminal and by constructing industrial, commercial, recreational, and highway facilities. The ultimate cost of these improvements will exceed 100 million dollars.

A small but essential part of the work will be to extend and relocate a runway over a fill to be constructed in what is now the South Slough of the Columbia River. To construct the fill, the Port proposed to remove all or portions of three small islands by dredging. The 33 million cubic yards of dredged material will be used to construct the fill and to create a lagoon and marina area. These improvements will not affect the main channel or the navigability of the Columbia River which flows between Oregon and Washington. In fact, the improvements will increase the navigability of the river.

After extended hearings, the Secretary of the Army through the Portland District Corps of Engineers of the United States Army (Corps of Engineers), pursuant to 33 U.S.C. § 403,[1] issued its permit to the Port dated August 5, 1969, to dredge and fill the portions of the Columbia River described in the Port's plans attached to the permit.

The plaintiffs, a group of Washington citizens who own property either on or near the riverfront in Clark County, Washington, object to the proposed airport expansion. Most of the plaintiffs belong to conservation organizations, and they fear that the proposed plans to expand the airport will not only create congestion and noise, but will also pollute the atmosphere and erode the river bank. Plaintiffs filed this action to declare the permit invalid. They also seek to force the Port and the Corps of Engineers to return the land to its original condition because they say that the Corps of Engineers had no authority to authorize this work under Section 403. Plaintiffs claim that the work to be performed under the permit required Congressional approval under 33 U.S.C. § 401.[2] Plaintiffs also allege a failure to comply with the provisions of the National Environmental Policy Act of 1969. 42 U.S.C. § 4321 et seq.

The Secretary of the Army, the Secretary of the Interior, the Secretary of Transportation, and the other defendants are public officials. Plaintiffs allege they are responsible, either personally or through their assistants, for the findings, orders and decisions relating to the issuance of the permit to the Port of Portland.

1. 33 U.S.C. § 403 was enacted in 1899 as § 10 of the Rivers and Harbors Appropriations Act of 1899, Ch. 425, 30 Stat. 1151. In its present form it reads:
"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any * * * navigable river or other water of the United States * * * except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of, * * * the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

2. 33 U.S.C. § 401, originally enacted as § 9 of the Rivers and Harbors Appropriation Act of 1899, now reads:
"It shall not be lawful to construct or commence the construction of any * * * dam, dike or causeway over or in any * * * navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army. * * *"

In addition to contending that the work to be performed under the permit required Congressional approval, the plaintiffs allege that the Corps of Engineers, in issuing the permit, acted arbitrarily and capriciously.

This case is now before the Court on the segregated issues of:

1. Plaintiffs' standing to maintain this action;

2. The jurisdiction of the Court;

3. The authority of the Army defendants to issue the permit under Section 403.

## I. STANDING

█ In a prior action in this court brought by the Citizens Committee for the Columbia River, the Sierra Club, and the Washington State Sportsmen's Council, Inc. against the same defendants, Civil No. 69–498, a group of unincorporated conservation organizations filed an action in which they raised the same issues that plaintiffs raise here.

I dismissed that action because I found that the unincorporated organizations lacked standing to maintain it. I relied on Alameda Conservation Association v. State of California, 437 F.2d 1087 (9th Cir. 1971). In *Alameda, supra,* the Ninth Circuit Court of Appeals found that the unincorporated plaintiff, which was formed to protect the public interest in the waters of San Francisco Bay, had no standing to protest a fill operation in the Bay. The Court, however, held that the eight individual members of the Association, who joined as plaintiffs and who owned property which either abutted or was close to the Bay and who alleged individual damage, did have standing.

Some members of the conservation groups in Civil No. 69–498 have returned to this Court as individual plaintiffs. They own property opposite the proposed expansion on the Washington bank of the Columbia River or immediately adjacent to it. They all allege that the proposed construction, if permitted, will result in substantial damage to their property.

The government defendants have again challenged the plaintiffs' standing because the plaintiffs allege damage to their environmental and recreational interests and not to their navigation rights in the river.

These issues were raised and rejected in *Alameda, supra,* and in Citizens Committee for the Hudson Valley v. Volpe, 302 F.Supp. 1083 (S.D.N.Y.), aff'd 425 F.2d 97 (2d Cir.), cert. den. 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970). I reject them here. I find that the plaintiffs do have standing to maintain this action.

## II. JURISDICTION

█ The Government defendants in this case, as in other similar cases, have challenged the jurisdiction of the Court to review agency action. In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) a citizens group challenged the Secretary of Transportation's authorization to construct a public highway through a park. The Supreme Court, in rejecting the jurisdictional attack, stated:

"A threshold question—whether petitioners are entitled to judicial review —is easily answered. Section 701 of the Administrative Procedure Act, * * * provides that the action of 'each authority of the Government of the United States,' which includes the Department of Transportation, is subject to judicial review except where there is a statutory prohibition on review or where 'agency action is committed to agency discretion by law.'" 401 U.S. at 410, 91 S.Ct. at 820.

Here, the plaintiffs challenge the action of the Corps of Engineers on the ground that the work to be performed under the permit necessarily involves the construction of "dikes, dams or causeways" within the meaning of 33 U.S.C. § 401, and therefore requires Congressional approval. The Govern-

ment denies this contention and asserts that the permit was properly issued under Section 403. I agree with the Court in Citizens Committee for Hudson Valley v. Volpe, *supra,* when it said:

"But whether or not the Army could exercise its authority under § 403 without reference to § 401 was a matter of statutory construction obviously subjected to full review in the district court by the Administrative Procedure Act * * *" *Id.,* 425 F.2d at 101.

Jurisdiction here also exists under the Federal Question Statute. 28 U.S.C. § 1331 (1971). Each plaintiff alleges that the work will cause damage to his or her individual property in excess of $10,000. Although the Government defendants deny that the plaintiffs will suffer any such damage, particularly to their navigation rights, the jurisdictional amount is not measured only by the damage to a plaintiff or to a group of plaintiffs. The Court must look to the effect of the action on any party in the litigation. Ridder Bros., Inc. v. Blethen, 142 F.2d 395 (9th Cir. 1944); State Chartered Banks v. Peoples National Bank, 291 F. Supp. 180 (W.D.Wash.1966). See also A. C. McKoy Inc. v. Schonwald, 341 F.2d 737 (10th Cir. 1965).

The Port has spent more than $500,-000 on the proposal, all of which will be lost if the project is halted.

I find that the Court has jurisdiction over the subject matter of this action.

### III.   AUTHORITY TO ISSUE PERMIT

█ The Corps of Engineers permit to the Port of Portland authorized the Port to dredge and fill material from the existing bed of the Columbia River, to create new land with the fill material, and to relocate the South Slough of the Columbia River through a new channel to be cut through Government Island.

This permit was issued under 33 U.S. C. § 403. The Secretary of the Army, upon the recommendation of the Chief of Engineers, is specifically authorized by Section 403 to grant permits to exca-

vate, fill, alter and modify the course, location, condition and capacity of the channel of a navigable river.

Plaintiffs admit that the Corps of Engineers can validly exercise this authority, but plaintiffs assert that the fills which are shown and described in the plans of the Port, attached to the permit, are dikes.

Plaintiffs rely on dictionary definitions of dikes, which define a dike as "a bank of earth, thrown up to form a barrier, line of demarcation or the like; especially an embankment to prevent inundation." Black's Law Dictionary, 4th Ed.; Webster's New International Dictionary, 2d Ed.

Plaintiffs also rely on Citizens Committee for the Hudson Valley, *supra,* in support of their contention that the work authorized in the permit will involve the construction of a dike. In *Hudson Valley,* the plaintiffs challenged the construction of the proposed Hudson River Expressway. The Corps of Engineers had issued a permit under 33 U.S.C. § 403 for the construction of a land fill to support a portion of the expressway. The plaintiffs contended that the fill work involved the construction of dikes and that Congressional consent was therefore required under 33 U.S.C. § 401. The plans submitted to the Corps of Engineers referred to the work as "dikes". So did the permit. The District Court in finding that the construction contemplated by the permit included "dikes" within the meaning of § 401 adopted the broad dictionary definition of "dikes" presented by plaintiffs here, saying, "In the absence of any legislative or judicial authority to support the defendants' theory of statutory interpretation [that the dikes are within § 401 only if they obstruct navigation] we apply the ordinary meaning to the term 'any dike'". 302 F.Supp. at 1089. The Court of Appeals for the Second Circuit affirmed in an opinion primarily concerned with questions of standing and jurisdiction. 425 F.2d 97 (1970).

Here, defendants presented the evidence of legislative history and consistent administrative practice which was not before the court in *Hudson Valley*. This evidence supports the defendants' contention that § 401 requires Congressional consent for dikes only when they are obstructions to navigation. To accept plaintiffs' contention that any structure within the dictionary definition of a dike requires Congressional consent is to ignore the language and purpose of the legislation and its interpretation for almost 70 years.

The legislative history shows that Congress enacted the Rivers and Harbors Appropriation Act of 1899, Ch. 425, 30 Stat. 1121, as a comprehensive plan for keeping our interstate waterways clear of unreasonable obstructions and structures. It required approval of the federal government for work on navigable interstate waterways. Every structure built in a navigable waterway required the approval of the Chief of Engineers and the Secretary of War (now the Secretary of the Army). In addition, for those structures like bridges, dams and dikes, usually larger structures, which are placed across a river and which constitute an obstruction to navigation, Congressional consent was required. This distinction was written into the law, apparently because of the belief that Congress could not constitutionally delegate to the Secretary of War or to any other agency the authority to permit an obstruction of a navigable waterway. United States v. Keokuk & H. Bridge Co., 45 F. 178 (S.D. Iowa 1891).

In Wisconsin v. Illinois, 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426 (1928), the Court examined the practice of permitting the Secretary of War to issue permits under Section 403 without Congressional approval and stated:

"This construction of § 10 [of the Rivers and Harbors Appropriation Act of 1899 (33 U.S.C. 403)] is sustained by the uniform practice of the War Department for nearly 30 years.

Nothing is more convincing in interpreting a doubtful or ambiguous statute." *Id.* at 413, 49 S.Ct. at 170.

Since that time, the Secretary of the Army and the Corps of Engineers have followed this practice. In 1937, the Secretary issued a permit to construct a fill in the East River to support a 9,000-foot runway for the LaGuardia Airport; in 1942, he issued a permit for a 12,000-foot runway in the Jamaica River for the John F. Kennedy Airport (then Idlewild); in 1960, he granted a permit for runway extensions into San Francisco Bay for the San Francisco International Airport; and nine years later, he authorized the Oakland International Airport to construct diking and dredge filling of the San Francisco Bay for runway extensions.

There are numerous other instances in which the Secretary authorized major projects under Section 403, even when the work to be performed was loosely referred to as a "dike", if the proposed improvement did not obstruct navigation.

To accept the plaintiffs' construction of Section 401 would make Section 403 meaningless because "jetties", "breakwaters" and "fills", mentioned in Section 403, all come within plaintiff's dictionary definition of dikes.

I find that the work that the Port is authorized to construct under the permit of August 5, 1969, does not obstruct navigation and that the fills and other structures are not "dikes" within the meaning of 33 U.S.C. § 401.

Although plaintiffs contend that the work to be performed under the permit includes a causeway and therefore requires the consent of the Secretary of Transportation as well as Congress, I find that no such structure is authorized. Whether a causeway will be built need not be determined at this time.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).