**SIERRA CLUB, a non-profit California corporation, et al., Plaintiffs,**

v.

**LESLIE SALT CO., a Delaware corporation, et al., Defendants.**

**No. 72 561–WTS.**

United States District Court,
N. D. California.

Oct. 13, 1972.

1100

John D. Hoffman, Sierra Club Legal Defense Fund, San Francisco, Cal., for plaintiffs.

Edgar B. Washburn of Landels, Ripley & Diamond, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action brought by the Sierra Club, Save San Francisco Bay Association ("SSFBA"), and Kent C. De-

drick for injunctive and declaratory relief, seeking to compel defendants Leslie Salt Company ("Leslie") and Leslie Properties, Inc. ("Leslie Properties") to remove dikes allegedly constructed and maintained by said defendants in and around an area of San Francisco Bay known as Bair Island.

Plaintiffs allege in the complaint that defendants constructed these dikes without the prior consent of Congress and without submission to and approval by the United States Army Chief of Engineers and the Secretary of the Army as required by 33 U.S.C. §§ 401 and 403 (Rivers and Harbors Act of 1899).

They further allege that the dikes were originally constructed by Leslie to prevent the tide waters of San Francisco Bay from flowing over Bair Island tidal marshes to facilitate the production of salt; that defendants have now ceased to use the area for salt production and now propose to fill and develop the area for residential use; that said dikes have destroyed the ecological productivity of the area; and, that the dikes have had a detrimental and adverse effect upon navigation in the area by obstructing access to formerly navigable waters and by causing the build-up of sediment in that and other areas of San Francisco Bay.

Plaintiffs also charge that the construction and maintenance of such dikes violates 16 U.S.C. § 662 (Fish and Wildlife Coordination Act of 1934), certain California constitutional and statutory provisions, and the "public trust" in navigable waters of the State of California.

Defendants now move to dismiss the action on various grounds, and, to join the Secretary of the Army and the State of California as parties in the action, raising several issues which we shall consider separately as follows:

STANDING

Defendants move to dismiss the action on the grounds that plaintiffs have failed to allege a sufficient injury in fact to give them standing in this action.

Although conceding that aesthetic, conservational and recreational matters as well as economic values may constitute the type of injury that can be alleged in support of standing (Defendants' reply memorandum, filed May 19, 1972, at p. 5), defendants contend that plaintiffs here have failed to allege that they, themselves, have suffered a sufficient injury, relying principally on the decisions in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), aff'g Sierra Club v. Hickel, 433 F.2d 24 (9th Cir. 1970) and Alameda Conservation Assoc. v. State of California, 437 F.2d 1087 (9th Cir. 1971).

On the issue of standing the complaint alleges, in substance and effect, that plaintiff Sierra Club is a national conservation organization having among its purposes the protection of the scenic and natural resources of the United States; that plaintiff SSFBA is a local conservation organization with the purpose of preserving, protecting and enhancing the waters, shoreline, and natural and wildlife resources of San Francisco Bay and its shoreline; that numerous members of both these organizations use the waters of the Bay for sailing, fishing and other water-oriented activities; that many of such members own or reside on property within five miles of the waters of the Bay and derive enjoyment from the scenic beauty of the Bay and benefit from the Bay's moderating effect on the climate of the area and on air pollution; that plaintiff Dedrick resides within five miles of the Bay and frequently sails the waters of the Bay in his own boat, including the waters in and around the area which is the subject matter of this action; that prior to being diked by defendants, the area in question was submerged under the waters of the Bay, constituted a part of the navigable waters of the Bay, served as a major resting and feeding ground for various forms of natural life, served as a sediment trap to retard siltation in the Bay and its tributaries (including two major navigable sloughs which crossed the area in question),

and, in its natural state, contributed to the Bay's ability to moderate the climate of the region, to flush and disperse pollutants in the water, and to disperse pollutants in the ambient air; and, that, therefore, the alleged acts of defendants have caused and continue to cause great harm and injury to plaintiffs and to the aesthetic, conservational and recreational interests which they represent.

Sierra Club v. Morton, supra, involved the issue whether the Sierra Club had alleged sufficient facts to give it standing to seek an injunction against a proposed ski development in the Sequoia National Forest on the grounds that federal agency permits to be issued for the project were unlawful. The Sierra Club had chosen to rely on the theory that allegations of the Club's long standing concern with and expertise in matters involving the use of natural resources were sufficient to give it standing as a "representative of the public." Applying the so-called "injury-in-fact" test on standing to the facts alleged in the complaint, the Supreme Court ruled that the allegations of the Club's "generalized" interests were insufficient to give the Club standing. Noting that the party seeking relief must be, himself, among the injured, the Court pointed out that the Club had failed to allege that *it* or *its members* would be affected in any of their activities or pastimes by the proposed action sought to be enjoined, and, that nowhere in the pleadings or affidavits did the Club state that its members used the area in question for any purpose, much less that they used it in any way that would be significantly affected by the proposed action, thereby holding implicitly that such an allegation as to the Club's members would have been sufficient to afford the Club standing in the action.[1] 405 U.S. at p. 735, 92 S.Ct. 1361.

The issue here, therefore, is whether the plaintiffs in this action, Sierra Club and SSFBA, have alleged a sufficient injury-in-fact to themselves, or to their members, within the meaning of Sierra Club v. Morton, supra. In determining whether plaintiffs have met that requirement, it is necessary to review the Ninth Circuit's decision in *Alameda Conservation Association*, supra, involving facts and issues similar to those presented in the present action.

In *Alameda*, the Alameda Conservation Association, and eight of its members, brought an action against the State of California, the Leslie Salt Co., and others, seeking, among other relief, to enjoin Leslie from filling and obstructing portions of San Francisco Bay on the grounds that such acts were in violation of 33 U.S.C., Sections 401 and 403, the provisions sued under by plaintiffs in the present action. As noted in the opinion of the court, plaintiffs in *Alameda* alleged that they owned or resided on property so close to the Bay that their health and enjoyment of their property was materially affected by the filling of the Bay and that they would be irreparably injured unless further obstruction and filling by Leslie was restrained; they further alleged that the injury to be suffered by them included ". . . destruction of fisheries and wildlife from which plaintiffs personally benefit and destruction of the fishing characteristics of the San Francisco Bay and its climate [sic] cooling effect [sic] . . ." 437 F.2d at 1089. Rendering its decision prior to the Supreme Court's ruling in Sierra Club v. Morton, supra, the Court of Appeals ruled that the Conservation Association, itself, did not have standing (Hamley, J. dissenting), but a majority of the court (Trask, J. dissenting) held that the eight individual plaintiffs who alleged that they owned

---

1. In connection with the above discussion on standing, the Court, at p. 735, n. 8, 92 S.Ct. 1361, indicated that the Club could amend its complaint in this court to allege an "individualized" interest in it or its members; the Club recently filed such an amendment to its complaint. (See, Memorandum of Decision on Plaintiffs' motion for leave to Amend Complaint, Sierra Club v. Morton, 348 F.Supp. 219, N.D.Cal., 1972).

property either bordering or within six miles of the Bay, had alleged a sufficient interest to afford them standing in the action. Judge Hamley indicated that, in his opinion, plaintiffs' allegations concerning interference with plaintiffs' enjoyment of the aesthetic, conservational and recreational values associated with San Francisco Bay amply established their standing to sue. 437 F.2d at 1096. Judge Merrill, concurring with Judge Hamley on the standing of the eight individual plaintiffs, stated that, in his view, ". . . injury in fact to individuals is threatened if their relationship to the Bay, through proximity of residence or regularity of use, is such that in their normal activities injury to the Bay of the type alleged cannot but affect their esthetic, recreational or environmental interests." 437 F.2d at 1097.

■ Plaintiffs here allege, on behalf of their members, interests of such members and injury to such interests substantially similar to those held to be sufficient in the case of the eight individual plaintiffs in *Alameda,* supra. A substantial number of the members are alleged to own or reside on property within five miles of the Bay, and defendants are alleged to have injured certain aesthetic and environmental interests of such members by virtue of the construction of the dikes, i. e., by causing a detrimental effect on the natural beauty, wildlife and moderating effect of the Bay on the climate and on air pollution. The allegations here go even further than those held to be sufficient in Alameda: it is alleged that numerous Sierra Club and SSFBA members sail the waters of the Bay and that the dikes have had an adverse effect on the navigability of the waters of the Bay. Plaintiff Dedrick makes substantially the same allegations on his own behalf.

It is clear from the foregoing that, if these organization members were themselves plaintiffs in this action, they, as well as plaintiff Dedrick, would have standing to sue. It follows from our in-terpretation of Sierra Club v. Morton, supra, that, if the individual members of the plaintiff organizations are alleged to have a sufficient interest and to have suffered injury-in-fact that would give them standing as plaintiffs, then the organizational plaintiffs themselves can assert such interests on behalf of their members, and, therefore, have standing to bring this action.

### RIGHT OF ACTION UNDER 33 U.S.C. §§ 401 and 403

Defendants next contend that the complaint should be dismissed for lack of subject matter jurisdiction on the grounds that no cause of action by "private" plaintiffs can lie under 33 U.S.C. §§ 401 and 403 (Rivers and Harbors Act of 1899).

Title 33 U.S.C. § 401 provides, in pertinent part, that:

"It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army. . . . ."

Section 403 of that Title provides that:

"The creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States is prohibited; . . . and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by

the Secretary of the Army prior to beginning the same."

Title 33 U.S.C. § 406 makes violation of the above provisions a misdemeanor punishable by fine or imprisonment and provides further that:

"the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States."

Defendants contend that suits by the Attorney General under that section constitute the exclusive remedy for violations of §§ 401 and 403, and, therefore, that private causes of actions are barred, citing Bass Anglers Sportsman's Society of America v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn., 1971), Guthrie v. Alabama By-Products Co., 328 F.Supp. 1140 (N.D.Ala.1971), and Connecticut Action Now v. Roberts Plating, 457 F.2d 81, 3 E.R.C. 1934 (2d Cir. 1972) as principal supporting authority.

The same contention was made in this court by defendants in Alameda Conservation Association v. State of California, N.D.Cal. No. 48620 in support of their motion to dismiss the complaint in that action. Having found reason to dismiss the action for lack of standing, we concluded that it was not necessary to decide at that time the issue whether the statutory remedy for violations of 33 U. S.C. §§ 401 and 403 provided in § 406 was exclusive. (Memorandum of Decision, filed April 3, 1968 in N.D.Cal. No. 48620, at p. 7). The Court of Appeals, however, as already indicated, concluded that certain plaintiffs had standing, and

went on to discuss whether a cause of action had been stated by plaintiffs under 33 U.S.C. § 403. Writing for a unanimous court on this issue, Judge Trask stated as follows:

"It is alleged that Leslie intends to and will, unless restrained, fill and obstruct great portions of the bay in violation of 33 U.S.C. §§ 401–406 which will result in damage to the plaintiffs. . . . From these allegations it would appear that there is a sufficient claim that the defendant Leslie has been engaged in, is now continuing to engage in, and will engage in unlawful action in the future, unless restrained: to wit, the obstruction and filling of large portions of San Francisco Bay. It would appear that there is a sufficient claim that this action is unlawful because it is in violation of a statute of the United States, 33 U.S.C. § 403. And finally, the amended complaint alleges that this unlawful activity would cause damage and injury to the plaintiffs personally or to some of them." 437 F.2d at 1094.

The court then held that the action should not have been dismissed on motion.

■ Although the Court of Appeals did not expressly discuss the "exclusive remedy" argument in its opinion, we can only conclude from the court's ruling as set forth above that it is the law in the Ninth Circuit that a claim for injunctive relief for violation of 33 U.S.C. § 403, otherwise sufficient, should not be dismissed merely because the action has been brought by "private" individuals instead of by the Attorney General.[2] The same reasoning would apply to a claim stated under 33 U.S.C. § 401, since we see no reason for distinguishing in this context that provision from § 403.

---

2. Defendants contend that the decisions in *Bass Anglers*, *Guthrie* and *Connecticut Action Now*, supra, stand for the proposition that a private cause of action does not lie under §§ 401 and 403. Those cases, however, did not involve the provisions in issue here, i. e., §§ 401, 403 and 406, but concerned violations of § 407

and the criminal penalty provision in § 411, and can be distinguished on that ground alone. § 411, unlike § 406 which provides for criminal penalties and civil injunctive relief, sets forth only criminal sanctions for violations of § 407 and makes no provision for injunctive actions.

It appears, therefore, that plaintiffs here have stated a sufficient claim under 33 U.S.C. §§ 401 and 403, and that the motion to dismiss those claims should be denied.

## JOINDER OF PARTIES

Defendants also seek dismissal of the action under FRCP 12(b)(7) on the grounds that plaintiffs have failed to join the Secretary of the Army and the State of California, who, defendants contend, are indispensible parties within the meaning of FRCP 19. In the alternative, they seek joinder of such parties under FRCP 19, or, under the permissive joinder provisions of FRCP 20.

Defendants assert that complete relief cannot be afforded to them in this action in the absence of these parties. As to the Secretary of the Army, defendants contend that plaintiffs' claims under 33 U.S.C. § 401 and § 403 involve the extent of the jurisdiction of the Secretary of the Army who, according to defendants, is vested with the responsibility for administering the Rivers and Harbors Act of 1899, and, that, therefore, in the event Leslie should prevail in this action, a judgment in its favor would not "affect the Secretary of the Army in his implementation of the Rivers and Harbors Act . . ."

With reference to the State of California, defendants argue that this action involves as well the responsibility of the State as trustee in matters concerning the public trust in tidelands and that the State is therefore an indispensible party.

Defendants also contend that, unless both parties are joined, Leslie will be subject to the substantial risk of incurring double, multiple or inconsistent obligations in the event such parties should litigate the issues presented in this action at some future time.

Given the present state of the pleadings, we cannot say that the Secretary of the Army is "indispensible" within the meaning of FRCP 19. Defendants' contention that the Secretary is vested with administrative responsi-

bility under the Act and might at some future time take a position inconsistent with this court's ruling is not persuasive. It is true that under the Act, prior approval by the Secretary of the Army is required for certain obstructions in navigable waters of the United States, but we can find no provision in the Act, nor do defendants cite any such provision, giving the Secretary an affirmative right of action for violations of the Act. Nor is there any allegation in the complaint here that the Secretary of the Army abused his discretion or otherwise failed to perform his duties under the Act. The allegation in the complaint is simply that defendants constructed the dikes without first obtaining the approval of the Secretary and others as required by 33 U.S.C. §§ 401 and 403.

Should it appear from the pleadings at some future time that an issue concerning the lawfulness of action taken by the Secretary of the Army concerning these dikes is present in the action, a motion to join the Secretary will be entertained at that time. On the present record, however, we see no reason to join the Secretary at this time.

Similarly, we cannot say at this time that the State of California is an indispensible party. The complaint simply alleges that the dikes were constructed in violation of the public trust in the navigable waters and shorelands of the State of California. There is no allegation that the State has somehow abdicated or abused its responsibility in the administration of the public trust. Should it appear at some future time that this action involves the issue whether the State has violated the public trust in approving the dikes or otherwise acting or failing to act, a motion to join the State as a party will be similarly considered at that time.

Accordingly, it is the order of the Court that defendants' motions to dismiss the action and to join certain parties should be, and the same are hereby, denied.